[Civ. No. 7590. First Appellate District, Division Two.—October 7, 1931.]

STANLEY RISING et al., Respondents, v. HENRY VEATCH, Appellant.

Hadsell, Sweet & Ingalls and Redman, Alexander & Bacon for Appellant.

Albert J. O'Brien and D. J. O'Brien, Jr., for Respondents.

DOOLING, J., *pro tem.*—In this action for malpractice respondents recovered judgment against appellant, a dentist.

The case was tried before a jury. In the course of the examination of respondent, Ethel Rising, she was asked by her counsel to relate a certain conversation with appellant. Over repeated objections of appellant's counsel the following testimony was given: "In regard to reimbursing us for the doctor bills— . . . Reimburse us for the expenses of the doctors; that it was out of his hands, and would have to be handled through his insurance."

Counsel for appellant immediately assigned the asking of the question and the answer as prejudicial misconduct that could not be cured by admonition and asked the court to declare a mistrial. The court refused to declare a mistrial, but struck out the offending answer and admonished the jury to disregard it. The whole proceeding so closely paralleled the similar proceeding in *Squires* v. *Riffe*, 211 Cal. 370 [295 Pac. 517], that the one might have been modeled upon the other. The courts have so frequently, and in the strongest terms, condemned the eliciting of evidence concerning insurance against liability carried by defendants that no excuse can be conceived for counsel bringing it out, and the practice is so recurrent as to call for the sternest measures by both trial and appellate courts whenever it occurs.

Counsel for respondents cite *Lahti* v. *McMenamin*, 204 Cal. 415 [268 Pac. 644], and claim that the purpose of the question was in good faith to elicit an admission of liability. But the question which elicited the answer complained of was put to counsel's own client and counsel either knew or should have known the answer to be expected. The answer as given contained no admission of liability and was admissible on no conceivable ground. That there was in fact no admission seems clear from what immediately followed when the court turned to the witness and asked: "That is the complete answer is it?" to which the witness replied: "As near as I can remember it."

Without reflecting on the good faith of counsel, we must hold under the authority of *Squires* v. *Riffe, supra,* that the giving of the testimony complained of was prejudicial error which could not be cured by the action of the court in striking it out and admonishing the jury to disregard it.

While this conclusion necessitates a reversal, certain other points are made which should be determined for the guidance

of the court upon a second trial. The facts of the case are that appellant in his office removed an impacted tooth from the mouth of respondent Ethel Rising. He gave her some medicine to use at home and instructed her to return to his office the next day. Upon the next day the patient's jaw was swollen and her lower jaw and neck discolored and she remained in bed. Her husband called at appellant's office and finding appellant out, related the condition of his wife to appellant's nurse and suggested that appellant call at her home to see the patient. The following day, the patient's condition being much the same, the husband repeated his call at appellant's office, again found appellant absent, and had a similar conversation with the nurse. Thereafter, the patient's condition becoming more aggravated, her husband made several unsuccessful efforts to reach appellant by telephone, but did not again call at his office. Finally a physician was called in and found the patient suffering from an infection which had its beginning in the wound in the mouth from which the tooth had been removed and had spread to the neck and shoulder. The treatment of this infection was prolonged and painful before a cure was effected.

It is not claimed that the original operation was negligently or improperly performed or that the after-treatment originally prescribed was not proper, the gist of the action being based upon the claim that after being informed through his nurse of the patient's condition appellant failed to take any steps to care for or treat her.

From the testimony of appellant and his nurse it would appear that the symptoms of the patient as described by the husband to the nurse were never related by the nurse to the doctor. However, the jury were properly instructed that if the nurse had actual or ostensible authority to receive messages for appellant that appellant would be bound by the message as given to the nurse. Treating the case then as one in which the husband's message had been delivered to the doctor *verbatim*, was the evidence sufficient to support a verdict against appellant?

The facts have not their pattern in any decided case that has been called to our attention, but the rules of law applicable to them are simple and well settled.

■ A dentist, like a physician, is held in the practice of his profession to that reasonable degree of skill and learning generally possessed by others of his profession in the same locality, and to the exercise of reasonable and ordinary skill in the application of that learning. (*Nelson* v. *Parker,* 104 Cal. App. 770 [286 Pac. 1079].) ■ Ordinarily, proof of the prevailing standard of skill and learning in the locality, and proof on the question of the propriety of particular conduct by the practitioner in particular instances is not a matter of general knowledge and can only be supplied by expert testimony. (*Patterson* v. *Marcus,* 203 Cal. 550, 553 [265 Pac. 222].) Only in those instances where the question of the propriety of the treatment may be said to be so well known or simple as to be matter of common knowledge, or the matter is of such a nature as may be ascertained by the ordinary use of the senses of a nonexpert does expert testimony become unnecessary. (*Barham* v. *Widing,* 210 Cal. 206 [291 Pac. 173] ; *Nelson* v. *Parker, supra.*)

■ In this case the only testimony of an expert at all calculated to throw light on the propriety of appellant's conduct was that of a physician, Dr. Ottinger, who was asked whether a woman who had had an impacted tooth extracted and who on the following day and the day after had a swelling in her jaw and a discoloration of the lower jaw and neck finally extending to the shoulder should have had medical treatment. To this question the witness replied: "Yes, she should have had something."

As we view it the case in this phase presents two questions: 1. Having in view the prevailing standard of skill and learning of dentists in the same locality in the exercise of ordinary care should appellant upon being informed that his patient's jaw was swollen and her lower jaw and neck discolored have from that information diagnosed the condition as one needing further or different treatment from that which he had already prescribed for use at home by the patient? and 2. Was there in view of the prevailing standard of practice among dentists in the locality any positive duty upon appellant to visit the patient in her home? We cannot close our eyes in the consideration of the second question to the fact that dentists are primarily office practitioners and that it is the common practice at least for them to treat patients in the office and not elsewhere. On

neither of these questions was any expert testimony given. Nor in our judgment are they questions upon which a layman could properly form an opinion. On the first question for aught that appears from the testimony a dentist of the prevailing skill and learning of dentists generally in the community might in the exercise of ordinary care have concluded that the treatment which he had already prescribed was sufficient to meet the conditions described by the husband to the nurse. "A physician is not held to a higher degree of responsibility in making a diagnosis than in prescribing treatment. (See *Brewer* v. *Ring,* 177 N. C. 476 [99 S. E. 358, 364].) When due care, diligence, judgment and skill are exercised a mere failure to diagnose correctly does not render a physician liable. (*Jaeger* v. *Stratton,* 170 Wis. 579 [176 N. W. 61].) A mistake in diagnosis in the present case was alleged and proved and is conceded to have taken place. But it was not only necessary for the plaintiffs to prove such mistake, but also that the mistake was due to failure to exercise ordinary care, diligence and skill in making the diagnosis. (*Schumacker* v. *Murray Hospital,* 58 Mont. 447 [193 Pac. 397, 403].) Mere proof that the diagnosis was wrong would not support a verdict. (*Edwards* v. *Uland,* 193 Ind. 376 [140 N. E. 546, 548].) . . . As to what is or is not the proper practice is uniformly a question for experts and can be established only by their testimony." (*Patterson* v. *Marcus,* 203 Cal. 550, 552, 553 [265 Pac. 222].)

We conclude that in the absence of expert testimony as to the usual standards of skill and learning of dentists in the same locality, and the propriety or impropriety of appellant's conduct judged by those standards in the face of the information conveyed by the husband to the nurse, the verdict is without support in the evidence.

■ The question of the contributory negligence of respondents on the facts proved was in our opinion properly left to the jury. Certain instructions complained of which were given because of a misconception by the trial judge of the issues and the evidence are not likely to be repeated.

The judgment is reversed.

Nourse, P. J., and Sturtevant, J., concurred.