[Civ. No. 8700. First Appellate District, Division One.—January 5, 1934.]

GUS PAULOS, Respondent, v. MARKET STREET RAIL-WAY COMPANY (a Corporation) et al., Appellants.

William M. Abbott, K. W. Cannon, Cyril Appel, Ivores R. Dains and Abbott, Cannon, Appel & Dains, for Appellants.

Ingemar Hoberg, Leslie C. Gillen and Miller, Van Ness & Leo J. McEnerney for Respondent.

GRAY, J., *pro tem.*—Respondent Gus Paulos brought this action to recover damages for personal injuries, sustained in a collision between a horse-drawn peanut wagon, driven by him, and an interurban car, owned by appellant Market Street Railway Company and operated by appellant M. Kenny. The case was tried before a jury, which returned a verdict in respondent's favor and against appel-

lants for $6,500. The latter appealed from the judgment entered on such verdict, assigning as errors (1) the denial of their motions for a nonsuit and for a directed verdict, (2) the refusal to give certain instructions, requested by them, on the issue of contributory negligence, and (3) the giving of certain instructions, proposed by respondent, on the doctrine of last clear chance.

The wagon was struck by the car, northbound on Mission Street, as respondent, who had been traveling south on Mission Street, was making a left-hand turn into Trumbull Street, which terminates in Mission Street. Appellants do not question the sufficiency of the evidence to support the jury's implied finding that they were negligent, but they do claim that the evidence establishes, as a matter of law, respondent's contributory negligence because it shows that he made the turn in violation of sections 129 and 130 of the ''California Vehicle Act'' and that his driving of the slow-moving wagon in front of the rapidly approaching car negatived his exercise of ordinary care for his own safety. Consideration of these claims requires only a review of the evidence as to respondent's knowledge of the surrounding circumstances and his conduct before and at the time of the accident. Whether he passed to the right of the center of the intersection before turning, as required by said section 129, or cut the corner is decided by the location of the place of collision. His course of travel and the position of his wagon at time of impact, as indicated on a diagram used at the trial, shows that he had passed to the south of the center line of Trumbull Street, extended, as required by such section. A passenger on the front end of the car testified, upon respondent's behalf, that the wagon, at time of impact, was on such center line, but indicated its position, on the diagram, northerly of such line. A pedestrian, also on respondent's behalf, testified that, after the accident, he found glass on the pavement south of the center line. Another of plaintiff's witnesses found glass to the north of the center line. Motorman Kenny, another passenger and a motorist, traveling behind the respondent, each stated that the accident occurred north of Trumbull Street. A third passenger, called by appellants, testified both that the collision happened on the south side of the intersection and that the car had crossed Trum-

bull Street before the accident. In view of the conflict not only between witnesses, but also in the testimony of two witnesses, the court properly denied the motions and left the determination of the truth to the jury (19 Cal. Jur. 743).

Whether respondent first ascertained he could make the turn in safety, before attempting so to do, as required to do by said section 130, or made the turn without exercising ordinary care for his own safety is also the subject of conflicting testimony. Respondent testified that he saw the car four blocks away—a distance of 1,000 feet, when he commenced his turn, that he then thought he had ample time to complete the turn, that he next observed the car one and one-half blocks away, approaching at a speed of 40 to 45 miles per hour, that he heard its bell and whistle when the car was 100 feet distant and the wagon was on the tracks and that then he speeded up his horse. His passenger witness estimated the car's speed at the intersecting street where respondent first saw it at 20 to 25 miles per hour and immediately before the impact at 40 to 45 miles per hour. He also stated the wagon was dragged 200 feet by the car. A passer-by, also called by him, fixed the car's speed at the time of the collision at 40 to 45 miles per hour and the distance the car and wagon traveled thereafter at 300 feet and 30 feet, respectively. His other pedestrian witness stated that the car's speed at the next southerly intersecting street was 40 miles per hour and that the car stopped 275 feet beyond the place of impact. The motorman testified that his speed for several blocks had been 20 to 25 miles per hour; that, when 90 feet away, the wagon turned in front of the car; that he immediately reversed his motor, and that the car dragged the wagon 45 or 50 feet, when it stopped. One passenger, called by appellants, fixed the speed of the car at 20 to 25 miles per hour. Very similar facts, on an issue of contributory negligence, were held in *Wagner v. United Railroads,* 19 Cal. App. 396 [126 Pac. 186], to present a question of fact for the jury's determination and not a question of law for the court's decision.

■ Appellants complain of the court's refusal to instruct, at their request, that it was respondent's duty to use ordinary care to protect himself from injury. Since

the same matter was covered by an instruction that respondent was bound to have exercised ordinary care to avoid injury to himself, no damage resulted from such refusal.

■ The court gave several instructions, proposed by appellants, each of which commenced with the statement that "the laws of the state of California provided, at the time in question, among other things, as follows", and thereafter, respectively, contained the second paragraph of section 129, the first paragraph of section 122 and section 130 of the "California Vehicle Act" of 1929, without, however, stating their source. Since the accident occurred while respondent was making a left-hand turn, his position in the street was governed by section 129 and not by section 122 and the latter should not have been read to the jury.

■ Appellants complain that the refusal to give three of their proposed instructions resulted in the jury not being advised as to the effect of any violation of such sections by respondent. In the first, the jury was told to return a verdict for appellants if it found that respondent had violated "any of the provisions of the motor vehicle act" and that such violation was a direct and proximate cause of his injuries. This instruction would have been meaningless to the jury since no previous instruction mentioned the act.

■ The third instruction advised a verdict for appellants, if the jury found that respondent, in making a left-hand turn, did not approach the point of turning in the traffic lane to the right of and next to the center of the *right of way* and sustained his injuries solely in consequence of such conduct. The substitution of the phrase "center of the right of way" for the phrase "center of the roadway", used in section 129, was not only erroneous, but would have been confusing, since, due to the peculiarities of this intersection, the two centers are differently located. ■ The second refused instruction stated that "*any violation of any law* affecting the operation of vehicles constitutes negligence on the part of the driver or operator of such vehicle". (Italics ours.) Since there was no evidence as to respondent's violation of any law other than the above sections, the italicized portion would not have misled the jury into considering whether any other law had been violated by him (*Kelley* v. *Hodge Transp. System*, 197 Cal. 598 [242 Pac. 76]). Although such refusal was erroneous, appellants

must show that harm resulted therefrom before a reversal would be justified (2 Cal. Jur. 1026). ▓ They do not question that the evidence raised an issue as to the last clear chance nor that the evidence is sufficient to support the verdict upon that theory. The doctrine of the last clear chance necessarily implies contributory negligence in the plaintiff or injured party (*Keiper* v. *Pacific Gas & Electric Co.*, 36 Cal. App. 362 [172 Pac. 180]). The verdict, therefore, in holding appellants liable under that doctrine, impliedly found respondent was guilty of contributory negligence and so appellants could not have been injured by such refusal (4 C. J. 1051).

▓ Appellants do not deny that the evidence warranted instructions upon the doctrine of the last clear chance, but they do argue that five of those instructions were erroneous in specified particulars. They contend that the first of these instructions permitted the jury to predicate an application of the doctrine upon constructive instead of actual notice of peril. The criticised part of the instruction, which generally stated the essential elements of the doctrine, reads as follows: ''This is known in our law as the last clear chance rule and presupposes that the plaintiff has been negligent; that as a result thereof he is in a situation of danger from which he cannot escape by the exercise of ordinary care; that the defendant is aware of his dangerous situation under such circumstances, or *sees or knows facts from which a reasonable man would believe him to be in peril;* that he realizes or *ought from the circumstances at the time to realize the inability of plaintiff to escape therefrom;* that the defendant then had a clear chance to avoid injuring the plaintiff by the exercise of ordinary care and failed to do so.'' (Italics ours.) As appellants correctly interpret it, this instruction advised the jury that the doctrine was applicable either if the motorman actually knew of respondent's peril or if he knew of facts from which a reasonable man would infer such peril. The second alternative (the italicized portion) is wrong, they argue, because, before the doctrine can be applied, ''knowledge must be brought home to the particular defendant in charge of the instrumentality whether he be near-sighted, hard of hearing, excitable, lacking in judgment or otherwise so infirm or dull as not to readily realize the dangerous situation in which the plaintiff

has carelessly placed himself". Such argument is contrary to the decisions.

■ "As held in a number of cases, where a person sees another in a position which is in fact dangerous, he may not rely upon dullness to excuse him from not realizing the danger of the position (*Basham* v. *Southern Pac. Co.*, 176 Cal. 320 [168 Pac. 359]); and if he sees the dangerous situation he must use reasonable diligence in analyzing the same (*Starck* v. *Pacific Electric Ry. Co.*, 172 Cal. 277 [L. R. A. 1916E, 58, 156 Pac. 51]), knowledge of danger being imputed where the circumstances are such as to convey to the mind of a reasonable man that the plaintiff is in a position of peril (*Harrington* v. *Los Angeles Ry. Co.*, 140 Cal. 514 [98 Am. St. Rep. 85, 63 L. R. A. 238, 74 Pac. 15])." (*Nicolai* v. *Pacific Electric Ry. Co.*, 92 Cal. App. 100, 105 [267 Pac. 758, 761].) Even if the motorman had denied actual knowledge the jury could have disbelieved him and found, from the evidence, that he had such knowledge (*Hoy* v. *Tornich*, 199 Cal. 545 [250 Pac. 565]; *Darling* v. *Pacific Electric Ry. Co.*, 197 Cal. 702 [242 Pac. 703]; *Chappell* v. *San Diego & Arizona Ry. Co.*, 201 Cal. 560 [256 Pac. 73]).

■ Appellants criticise the above enunciation of the rule for its failure to include consideration of the mental or physical defects or deficiencies, if any, of the individual defendant. The judgment would not be affected by any determination, that might be now made, as to the correctness of appellants' contention, because there is no evidence establishing that the motorman was afflicted with any such defect or was otherwise than normal in those respects (*Armstrong* v. *Day*, 103 Cal. App. 465 [284 Pac. 1083]). Alleged omissions in an instruction as to matters not in issue and which do not appear to be applicable under the evidence cannot be considered on appeal (*Hutchason* v. *Spinks*, 3 Cal. App. 291 [85 Pac. 132]). " . . . the court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it" (*California* v. *San Pablo etc. R. R. Co.*, 149 U. S. 308 [13 Sup. Ct. 876, 37 L. Ed. 747], quoted in *In re Blythe*, 108 Cal. 124, 126 [41 Pac. 33]).

■ In a second instruction, the jury was told to return a verdict for respondent if it found that he was in a posi-

tion of danger from which he could not extricate himself at the time of the approach of the street-car, although placed in such position by his own negligence, and that the motorman was aware of his position of danger and, by the exercise of ordinary care, could have avoided the accident. Appellants find fault with this instruction for its failure to state that respondent could not recover if his contributory negligence was contemporaneous with the accident, or, if he could have avoided the accident when the motorman became aware of his danger. The omitted factors exclude the application of the doctrine of the last clear chance (*Young* v. *Southern Pac. Co.,* 189 Cal. 746 [210 Pac. 259]) and therefore are not elements properly to be included in a statement of the doctrine. In absence of a request for an instruction on such matters, they cannot now complain (*Townsend* v. *Butterfield,* 168 Cal. 564 [143 Pac. 760]).

██ In reading three instructions on contributory negligence, the court interpolated the comment that the doctrine of last clear chance was an exception thereto. Appellants complain that such action unduly emphasized that doctrine and deprived them of their defense of contributory negligence. The doctrine is an exception to the rule of contributory negligence (19 Cal. Jur. 652). Mere repetition of a correct statement of law is not ordinarily a ground of reversal (*Grillich* v. *Weinshenk,* 64 Cal. App. 474 [222 Pac. 160]).

The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 3, 1934, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 5, 1934.