[Civ. No. 14360.   First Dist., Div. One.   July 26, 1950.]

WILLIAM O. MAHNKEY et al., Respondents, v. PHILLIP BOLGER, Appellant.

Dana, Bledsoe & Smith for Appellant.

White & White, Margaret White and Arlington C. White for Respondents.

SCHOTTKY, J. pro tem.—The plaintiffs, Elsie C. and William O. Mahnkey, husband and wife, filed an action against Phillip Bolger to recover damages for personal injuries to

Mr. Mahnkey and damages to the automobile of Mrs. Mahnkey resulting from a collision with the automobile of defendant Bolger. The latter denied any negligence on his part, set up the defense of contributory negligence on plaintiffs' part, and also filed a cross-complaint seeking damages. The jury returned a verdict against defendant and in favor of plaintiff William Mahnkey for $6,650, and in favor of Mrs. Mahnkey for $850, the value of the car; defendant to recover nothing on his cross-complaint. A motion for a new trial was denied by the court. This appeal is from the judgment entered in accordance with the verdict.

Defendant urges three grounds for reversal: (1) Plaintiff William Mahnkey was guilty of contributory negligence as a matter of law; (2) the court erred in giving an instruction on last clear chance, and also gave an incorrect instruction on that subject; (3) plaintiffs' counsel was guilty of prejudicial misconduct in bringing before the jury evidence that defendant was insured.

Before discussing these contentions of defendant, we shall summarize briefly the factual situation as disclosed by the record, stating, as we must, the evidence most favorable to the plaintiffs.

On the evening of December 19, 1947, plaintiff William Mahnkey attended a company Christmas dinner party at a restaurant in South San Francisco. He testified that he had had two drinks before dinner and none afterward; that he left the restaurant alone and started for his home in San Francisco at about 2 o'clock in the morning of December 20. The defendant Phillip Bolger, on that evening, with his wife and another couple, had visited two taverns. He testified that he had had two drinks, and that he and his party were en route to a drive-in on Junipero Serra Boulevard when the accident occurred. There was no direct evidence that either driver was intoxicated. It was a rainy or drizzly night and the streets were wet. At about 2:25 a. m., Mr. Mahnkey was driving a 1938 gray Willys sedan belonging to his wife, Elsie C. Mahnkey, north on Mission Street in Colma. He was proceeding to his home, was alone, was driving about 25 miles an hour, and was in the left-hand lane of the three northbound lanes of Mission Street, along which streetcar tracks ran. When he was "a little more than" 25 feet south of School Street, which intersects Mission Street on the west side, he put his hand out signaling for a left turn, pulling it

in only when he reached the intersection. He slowed his speed to about 15 miles an hour, proceeded north to the center of the intersection because he "thought the button was there," and made a sharp left turn, heading west into School Street. His brakes, lights and windshield wiper were in good condition, and the latter two were in operation, his lights on low city beam. Mission Street runs slightly uphill as one goes north, approaching the intersection of School Street. The 1947 Plymouth sedan driven by the defendant Bolger, according to his testimony, was traveling approximately 25 miles an hour south along Mission Street, and was in the center of the three southbound lanes. As the Mahnkey car reached the center of the southbound Mission Street lanes, heading into School Street, it was struck on the right-hand front fender and door by the Bolger car. Mr. Mahnkey was rendered unconscious and was in the hospital for about three weeks. The car was a "total wreck."

The plaintiff testified that he had entered Mission Street three or four blocks south of School Street and had remained in the lane nearest the center. This was corroborated by a bystander eyewitness, a Mrs. Hooper, who was outside a nearby barbecue stand, and by others. Plaintiff put his hand out in a left-hand turn signal approximately 30 to 35 feet before reaching the intersection, and kept it there until he reached the intersection with School Street. His testimony in that connection was as follows: "Q. And that you then brought your arm in when you reached the intersection of School Street, is that correct? A. Yes. Q. That would mean, then, that a distance of 25 or 30 feet south of this south curb line of School Street, if we extended it across, you put your arm out and kept it out until you got the front of your car, got to this south curb line, is that right? A. Yes. Q. Then you brought your arm in and, as I understand it, you proceeded half way across School Street to the center point of School Street and made a right angle turn to go west, turning left, toward the west, is that right? A. That's right. Q. You traversed that distance half way across School Street and then your left turn to the point marked in on the diagram, at a speed of about 15 miles an hour? A. Yes. Q. You continued without interruption during that period of time, is that right? A. Yes. Q. No stopping at all? A. No. Q. You were at right angles to the other car when the collision happened, in the manner in which you have drawn it therein? A. Yes, sir."

The plaintiff testified that when he was about 50 feet away from the intersection he judged that the defendant was approximately 300 feet away, and that at the time he was entering the intersection the defendant "probably was about 275" feet away; that as he was about to make the turn from the middle of the intersection he "figured" the defendant was 175 to 200 feet away; and that after he started the turn he was looking down School Street to see the traffic situation there, and was only aware of the defendant's headlights just before the impact. He began to judge the defendant's speed when he (the plaintiff) was about 40 feet from the intersection, and estimated it to be approximately 35 miles an hour.

Other facts appearing in the record will be referred to hereinafter.

Defendant's first contention is that plaintiff William Mahnkey was guilty of contributory negligence as a matter of law, which precludes plaintiffs' recovery of damages. Before discussing this contention, we quote the language of our Supreme Court in the recent case of *Anthony* v. *Hobbie,* 25 Cal.2d 814, at page 818 [155 P.2d 826]: "Turning to the question of contributory negligence on the part of the decedent, certain rules must be remembered. The burden of proving contributory negligence is upon the defendant. (19 Cal.Jur. 697-699.) True, contributory negligence may be found by the trier of fact from the plaintiffs' own evidence. But cases in which it can be said that the negligence of plaintiff contributes proximately to the accident as a matter of law are rare. The rule has been stated in various ways in a legion of cases, that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion. [Citing cases.]"

The principal argument of defendant upon this point is that plaintiff William Mahnkey was negligent per se in not giving the required signal for the full distance of 50 feet before turning. Defendant quotes section 544 of the Vehicle Code, which provides: "(a) No person shall turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety

and then only after the giving of an appropriate signal in the manner provided herein in the event any other vehicle may be affected by such movement. (b) Any signal of intention to turn right or left shall be given continuously during the last 50 feet traveled by the vehicle before turning."

However, the mere proof of the violation of a statute does not of itself establish contributory negligence; it must also be proved that the breach of the statutory duty was the proximate cause of the injury. As stated in *Reeves* v. *Lapinta,* 25 Cal. App.2d 680, at page 681 [78 P.2d 465] : "The law is settled that (1) the violation of a statute or ordinance constitutes negligence *per se,* and (2) it constitutes contributory negligence if the failure to comply with the statute or ordinance contributes directly to the plaintiff's injury. [Citing cases.] "

We do not believe that under the evidence in the instant case it can be held as a matter of law that the failure of plaintiff to give the required signal was a proximate cause of the collision. Defendant testified that he saw plaintiff only a few seconds before the accident, when he (defendant) was only 20 feet from the intersection and plaintiff was about to cross over in front of him, headed west into School Street. It is apparent that even if plaintiff had had his arm out for the full required 50 feet defendant would not have seen it, and it would have made no difference in the result.

As we view the record, the question of negligence was one for the jury, and it was fairly inferable from the evidence that defendant was not in such close proximity to the intersection as to constitute an immediate danger to one turning, but rather that the defendant was negligent in approaching the intersection at too rapid a speed on this drizzly night, and in failing to keep a proper lookout for others who might be using the intersection. Under such circumstances, the question as to whether plaintiff, in making a left turn at the intersection while defendant was approaching from the opposite direction, exercised the degree of care that should be exercised by a reasonably prudent person under similar circumstances, was one of fact for the jury. (*McDevitt* v. *Rogers,* 58 Cal.App.2d 307 [136 P.2d 323] ; *Paulos* v. *Market Street Ry. Co.,* 136 Cal.App. 163 [28 P.2d 94].)

We conclude, therefore, that the implied finding of the jury that plaintiff was not guilty of contributory negligence as a matter of law finds support in the record.

Defendant next contends that the court erred in giving any instruction on the doctrine of last clear chance, arguing that

there was no evidence to support it; and defendant also questions the correctness of the following two portions of the instructions on last clear chance: (1) "Or, if you find that one was free from negligence and the other was negligent but that the former, *although not negligent,* had an opportunity or the last clear chance to avoid the accident, then the latter is entitled [to] recover from the former compensation for his damages, the amount of which you will determine"; (2) "The rule of the last clear chance means just what the words imply, namely that if one has the opportunity of avoiding the injury, *he must at his peril exercise it.* The question is not whose negligence came first or last, but whose negligence was the proximate cause of the injury." (Italics emphasize main objections of defendant.)

The case of *Girdner* v. *Union Oil Co.,* 216 Cal. 197 [13 P.2d 915], is a leading authority on the doctrine of last clear chance. It is there said, at page 202: "Whether or not, therefore, negligence is the proximate or remote cause is, as above stated, a question of fact in each particular case. The doctrine of continuing negligence has no application unless the negligence is the proximate cause of the injury. On the other hand, if all the elements of the last clear chance doctrine are present and plaintiff's negligence becomes remote in causation, then this doctrine applies. If any one of the elements of the last clear chance doctrine is absent, then plaintiff's negligence remains the proximate cause and bars recovery. But the continuous negligence rule does not apply to a situation in which the last clear chance rule, by the presence of its own elements, is brought into operation. Where these necessary elements are lacking, courts have declared, and rightfully so, that plaintiff's negligence being continuous and contributory with that of defendant bars a recovery. The necessary elements, as deduced from the well-considered cases, may be stated in substance as follows: That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape; that defendant has knowledge that the plaintiff is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation, and has the last clear chance to avoid the accident by exercising ordinary care,

and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure. It has been said that such failure by defendant to use ordinary care under such circumstances amounts to a degree of reckless conduct that may well be termed wilful and wanton, and when an act is thus committed, contributory negligence upon the part of the person injured is not an element which will defeat a recovery. (*Esrey* v. *Southern Pac. Co., supra* [103 Cal. 541 (37 P. 500)], at p. 545.)''

■ Applying the language just quoted to the evidence in the instant case, we find no justification for the operation of the doctrine of last clear chance. The defendant testified that he was 20 feet from School Street when he first saw plaintiff's car start to turn; that he applied his brakes and his car started to skid on the wet pavement; that he tried to go around plaintiff's car by turning into School Street, but could not make it, so again applied his brakes though it was too late for them to become effective. There is no evidence that defendant saw plaintiff's car sooner, but even if it could be inferred from the evidence that he did see plaintiff's car sooner it is difficult to see how defendant could realize that plaintiff was in a position of danger until plaintiff made the left-hand turn; and it is difficult also to see how defendant could have a last clear chance to avoid the collision after plaintiff made the left-hand turn. In order to make the doctrine of last clear chance applicable, we must assume that plaintiff was, as a result of his negligence, in a position of danger, which would mean that he negligently made a left-hand turn into the path of defendant's oncoming automobile. Defendant's car must have been close to the intersection or there would have been no collision. Defendant could not know that plaintiff was in a position of danger until plaintiff turned into his path, and then it was too late for defendant to have a last clear chance to avoid the collision. We believe that the instant case was one in which the questions of negligence and of contributory negligence should have been left to the jury, but we are convinced that it was prejudicial error to submit the issue of last clear chance to the jury. As was said in the case of *Poncino* v. *Reid-Murdock & Co.,* 136 Cal.App. 223 [28 P.2d 932], in which the court held that an instruction on the last clear chance doctrine was properly refused: '' . . . it is not enough to relieve a plaintiff of his own negligence that the defendant may have had *a chance* to avoid the accident, but the defendant must have had the *last chance* and also had a *clear*

*chance* to do so by the exercise of *ordinary* care. That he should have had the *last chance* implies that his chance to avoid the accident must have come later in point of time than any similar chance on the part of the injured person. That he should have had a *clear chance* implies that he must have had more than a *bare possible chance* to avoid an unexpected peril created practically simultaneously with the happening of the accident by the negligence of the injured party." (P. 227.) Also, in *Gundry* v. *Atchison, T. & S. F. Ry. Co.*, 104 Cal.App. 753, at page 764 [286 P. 718], the court quoted the following from *Bagwill* v. *Pacific Elec. Co.*, 90 Cal.App. 114 [265 P. 517]: " 'The words mean exactly as they indicate, namely, last *clear* chance, not possible chance.' " And in *Sichterman* v. *R. M. Hollingshead Co.*, 94 Cal.App. 486, at page 491 [271 P. 372, 1111], it was said: " . . . the evidence does not disclose any fact which showed to the driver of the truck that the Ford car was in a position of danger from which it could not extricate itself. Under the facts contained in the record the defendant had as much right to claim that the Ford car should have stopped."

In all of the above-cited cases, judgments for the plaintiffs were reversed, the evidence not justifying the giving of the issue of last clear chance to the jury by instructions. A leading case justifying reversal on this ground is *Wallis* v. *Southern Pacific Co.*, 184 Cal. 662 [195 P. 408, 15 A.L.R. 117], which stated: "This instruction may have governed the jury in arriving at a verdict for the plaintiff, and, in the absence of evidence to support it, must be held fatally prejudicial." (P. 672.) (See, also, *Dalley* v. *Williams*, 73 Cal.App.2d 427 [166 P.2d 595]; *Folger* v. *Richfield Oil Corp.*, 80 Cal.App.2d 655 [182 P.2d 337].)

As to the contention of defendant that the instructions given on the doctrine of last clear chance did not correctly state the law, we have read said instructions carefully, and believe that, read together, they correctly state the law on the subject. However, in view of our conclusion that the issue of last clear chance should not have been submitted to the jury, we deem it unnecessary to discuss this contention in detail.

Defendant's final contention is that plaintiffs' counsel was guilty of prejudicial misconduct in bringing before the jury evidence that defendant was insured.

On redirect examination of plaintiff William Mahnkey by plaintiffs' counsel, the following occurred: "Q. Now, in

answer to a question by Mr. Bledsoe [defendant's counsel] concerning the doctors that you visited, you testified that you had consulted with Doctor Drees at the Junipero Serra Hospital? A. Yes. Q. And that he had called in Doctor Smith, who made an examination at the Junipero Serra Hospital in connection with . . . [urinalysis] and diabetes, is that correct? A. Yes. Q. Now, did you at any time visit any other doctor since the time of the accident? A. Yes, I did. Q. What doctor was that? A. Doctor Cline was the name, I believe. Q. How did you happen to go to Doctor Cline? A. *Well, I was requested by the insurance company.* MR. BLEDSOE: If Your Honor please, we assign that as misconduct, the asking of that question as misconduct and ask the Court to declare a mistrial. THE COURT: Motion is denied. You will disregard the remarks about insurance. There is no insurance company a party to this suit." (Italics added.)

We would be extremely naive and unrealistic if we did not believe that the question "How did you happen to go to Dr. Cline?" could have no other purpose except to bring out the fact that defendant had an insurance carrier. Certainly, how plaintiff happened to go to Dr. Cline could have no relevancy to any issue in the case.

As this court said in *Freeman* v. *Nickerson,* 77 Cal.App.2d 40-54 [174 P.2d 688]:

"It is well settled in California that gratuitous references, either in the evidence or the argument, to the fact that a defendant carries liability insurance is prejudicial misconduct justifying a reversal. (*Squires* v. *Riffe,* 211 Cal. 370 [295 P. 517]; *Rising* v. *Veatch,* 117 Cal.App. 404 [3 P.2d 1023]; *Citti* v. *Bava,* 204 Cal. 136 [266 P. 954]; *Sischo* v. *City of Los Banos,* 26 Cal.App.2d 642 [80 P.2d 116 [119], 1020]; *Nichols* v. *Smith,* 136 Cal.App. 272 [28 P.2d 693]; *Schellenberg* v. *Southern Cal. M. Co.,* 139 Cal.App. 777 [35 P.2d 156]; 10 Cal.Jur. 10-Yr. Supp. 664.)

"The language of the Supreme Court in *Citti* v. *Bava, supra,* at page 138, is typical of the above cited cases. Referring to proof of a settlement disclosing 'the fact that the defendant was indemnified by a policy of insurance,' it is there said: 'The evidence of the settlement, alone, not connected up with any act or admission of the defendant and concerning which he had nothing to do was clearly inadmissible in evidence. The error in admitting it might not in and of itself require a reversal, but coupled with the avowed purpose and successful attempt of plaintiff's counsel to get before the jury not only

the fact of the settlement but also that the settlement was made by the insurance carrier of the defendant, puts the case in a position where section 4-½ of article VI of the Constitution will not save the judgment. The natural tendency of a line of examination that suggests to the jury that the defendant is indemnified against any judgment for damages against him is highly prejudicial to his rights, especially in a closely balanced case where the evidence otherwise would be easily sufficient on appeal to support a verdict either for the plaintiff or for the defendant. Such attempts on the part of counsel have frequently been held to be improper and prejudicial. . . . From an examination of the record in this case it is impossible for us to state that the jury would not have found a different verdict, had the objectionable examination not taken place and the evidence not been admitted.'

"In *Sischo* v. *City of Los Banos, supra,* the plaintiff testified to a conversation with the mayor of defendant city in a hospital shortly after the accident (p. 646) : ' "A. Well, the start of that conversation of course was about myself, how I was getting along, and how I felt, and how I was resting, and that he expressed his sympathy, the fact that I was so seriously injured, but the conversation led to the point where he said that the City of Los Banos in this matter was very lucky, due to his forethought in the matter; he said : 'We have taken out insurance, we only took out insurance only ten days before you had fallen.' " ' The appellate court said at page 647 : 'That the admission of this testimony was prejudicially erroneous is shown by the case of *Squires* v. *Riffe,* 211 Cal. 370 [295 P. 517]. The opinion of Toscano had no relevancy whatever to the issues involved.'. . . The statement as to the insurance was not involved in anything connected with the accident. . . . As stated in the case of *Squires* v. *Riffe, supra,* it must be presumed that counsel for the plaintiff knew the answer which his client would give, and that it would serve no purpose except to show that the city carried insurance.' " (77 Cal.App.2d, pp 54-55.)

"If the mention of defendants' insurance coverage is brought into the case gratuitously and is unrelated to a genuine issue in the case, it would, under the authorities, be misconduct justifying a reversal, but if the reference to insurance is connected up with an admission of negligence or of deemed misconduct. even though the law frowns upon referliability, or any other relevant admission, it will not be

ences to defendants' insurance coverage. . . ." (77 Cal. App.2d, p. 58.)

In *Rising* v. *Veatch,* 117 Cal.App. 404 [3 P.2d 1023], the judgment was reversed because of misconduct similar to that complained of in the instant case. In that case the court said, at page 406: "In the course of the examination of respondent, Ethel Rising, she was asked by her counsel to relate a certain conversation with appellant. Over repeated objections of appellant's counsel the following testimony was given: 'In regard to reimbursing us for the doctor bills— . . . Reimburse us for the expenses of the doctors; that it was out of his hands, and would have to be handled through his insurance.'

"Counsel for appellant immediately assigned the asking of the question and the answer as prejudicial misconduct that could not be cured by admonition and asked the court to declare a mistrial. The court refused to declare a mistrial, but struck out the offending answer and admonished the jury to disregard it. . . . "

In holding that the admonition did not cure the error, the court there said: "The courts have so frequently, and in the strongest terms, condemned the eliciting of evidence concerning insurance against liability carried by defendants that no excuse can be conceived for counsel bringing it out, and the practice is so recurrent as to call for the sternest measures by both trial and appellate courts whenever it occurs."

In view of the fact that the case must be reversed because of the error in giving the last clear chance instruction, we do not find it necessary to determine whether this reference to insurance would alone cause a reversal. It is sufficient to hold it was error.

In view of the foregoing, the judgment should be, and the same is, hereby reversed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied August 25, 1950, and respondents' petition for a hearing by the Supreme Court was denied September 21, 1950. Carter, J., voted for a hearing.