[Civ. No. 6187. First Appellate District, Division One.—May 22, 1928.]

LILLIAN M. NICOLAI, Respondent, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Appellant.

WILHELMINA NICOLAI, Respondent, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Appellant.

Frank Karr, E. E. Morris, C. W. Cornell and R. E. Wedekind for Appellant.

Tanner, Odell & Taft for Respondents.

KNIGHT, J.—As a result of a collision between a street-car owned and operated by appellant and a coupe automobile belonging to Miss Wilhelmina Nicolai and driven by one Cropper, in which her mother, Mrs. Lillian M. Nicolai, was riding, the latter was injured and the automobile was damaged; and separate actions were brought for the recovery of damages, one by Mrs. Nicolai on account of the personal injuries she sustained, and the other by Miss Nicolai for the damage to her automobile. The complaint in each action charged that the collision was caused wholly by the carelessness and negligence of the defendant, its agents, and servants, in the operation of its street-car. The actions were tried together before a jury, and Mrs. Nicolai was awarded a verdict for $2,500 as compensation for her injuries, and Miss Nicolai was awarded $420.75 for the damage to her automobile. From the judgments entered on these verdicts the defendant has appealed. Besides charging the jury upon the subjects of negligence and contributory negligence, the trial court instructed upon the doctrine of the last clear chance and appellant seeks a reversal of the judgment mainly upon the grounds that the evidence is insufficient to support the verdicts and that the instructions given upon the doctrine of the last clear chance do not correctly state the law upon that subject.

The accident happened on West Fifth Street, San Pedro, about 7 o'clock in the evening, midway in the block between Pacific Avenue on the east and Grand Avenue on the west. West Fifth Street extends east and west. It is 40 feet wide between curbs and 600 feet long between the intersecting avenues above mentioned. Along the northerly side thereof appellant maintains a single track over which its east-bound cars are operated against the west-bound vehicular traffic properly using that side of the street; and the northerly rail of said track is laid only 11 feet 8 inches from the northerly curb, so that there is not enough space for automobiles traveling westerly on that side of the street to pass between automobiles parked along the northerly curb and the street-car. At the time of the accident there was one automobile parked along the northerly curb in front of a laundry about 160 feet westerly from Pacific Avenue, and two others were parked

a little farther along on the same side, in front of a dyeing and cleaning establishment. Opposite the westerly line of said establishment there is a telephone pole which stands embedded in the curb, approximately in the middle of the block, 290 feet from Pacific Avenue. The street-car and the coupe entered the block at about the same time from opposite directions, and the impact occurred nearly opposite the telephone pole.

The circumstances showing the manner in which the collision occurred were established mainly by the testimony of Mrs. Nicolai, the motorman and a man named Quinn, who was following in an automobile next behind the Nicolai coupe at a distance of 50 or 60 feet, in a position to observe what happened. Cropper was not a witness, being out of the state at the time of the trial, and his testimony was not taken by either side. The testimony of the witnesses mentioned was to the effect that the coupe, after having entered West Fifth Street from Pacific Avenue, traveled along the right half of the street until it was in front of the laundry. It then turned on to the street-car track in order to pass the automobile parked at that point, and continued to travel toward Grand Avenue until it reached a point opposite the automobiles parked in front of the dyeing establishment. Whether it pulled off the track to the right between the automobile parked in front of the laundry and those parked in front of the dyeing establishment is disputed; but it would seem to be immaterial, so far as the application of the doctrine of the last clear chance is concerned, whether it did or did not, because up to the time it reached a point opposite the automobiles parked in front of the dyeing establishment its position was not dangerous, the driver of the coupe having had ample opportunity to turn off the track and stop anywhere between the laundry and the dyeing establishment. When it came abreast the automobiles parked in front of the latter establishment, however, it was clearly in imminent peril of being struck by the street-car, because it was directly in front of the oncoming car, which was approaching at a rate of speed between 30 and 35 miles an hour, according to respondents' witnesses, and the driver of the coupe was unable to turn off to the right on account of the two automobiles parked at that point. He, therefore, tried to extricate himself from his dangerous position by suddenly turn-

ing to the left as if intending to pass the street-car on the left or southerly side, but instantly discovered that the street-car was being paralleled on that side by an automobile traveling at the same rate of speed. He then diverted his course quickly to the right, endeavoring by this final effort to reach the curb by passing between the oncoming street-car and the last parked automobile in front of the dyeing establishment, but before the rear end of the coupe cleared the track it was struck by the street-car, thrown against the telephone pole and crushed. The evidence further shows that Cropper evidently saw the street-car as it approached some distance beyond the point of the collision because it was lighted, its bell was clanging and it was observed by both Mrs. Nicolai and Quinn; and the motorman admits that he saw the coupe when it entered West Fifth Street, that its maximum speed did not exceed 20 miles an hour, and that he watched it constantly as it came toward him until the collision occurred.

"The elements of the doctrine of last clear chance, which must be present in any given case in order to warrant the invocation of that doctrine," says the supreme court in the case of *Darling* v. *Pacific Electric Railway Co.*, 197 Cal. 702 [242 Pac. 703], "are these: (1) That the plaintiff has been negligent; (2) That as a result thereof she was present in a situation of danger from which she could not escape by the exercise of ordinary care; (3) That the defendant was aware of her dangerous situation and realized or ought to have realized, her inability to escape therefrom; (4) That the defendant then had a clear chance to avoid injuring her by the exercise of ordinary care; (5) That the defendant failed to avoid the accident by the use of ordinary care. It is not required of the plaintiff to show that her inability to escape from the threatened danger was a physical impossibility. The doctrine applies equally if she be wholly unaware of her danger and for that reason unable to escape it. Whenever she becomes aware of the danger, however, she must thereafter exercise ordinary care for her protection (citing cases). The test of the last clear opportunity of avoiding the accident is whether, when both plaintiff and defendant have been guilty of negligence causing the accident, the plaintiff has ceased to have any power to prevent it and

the defendant still retains the power of preventing it by the exercise of ordinary care."

Measuring the evidence of the present case by the foregoing rules of law, it is sufficient in our opinion to justify the application of the doctrine above mentioned. It tended to show at the outset that Cropper and the motorman were both guilty of negligence. The latter was negligent in operating the street-car in excess of 20 miles an hour in violation of the law of the municipality, and Cropper was doubtless negligent in not pulling in toward the curb and stopping somewhere between the automobile parked in front of the laundry and those parked in front of the dyeing establishment, so as to allow the street-car to pass, instead of attempting in the face of the fast approaching car to travel beyond the automobiles parked in front of the dyeing establishment before the street-car reached that point; and manifestly by thus maneuvering the coupe Cropper negligently drove into a dangerous pocket from which he was unable to extricate himself by the exercise of ordinary care, although, as shown, he made every effort to do so. When the coupe was driven abreast of the first automobile parked in front of the dyeing establishment, the motorman was evidently aware of the dangerous situation and realized or ought to have realized Cropper's inability to escape therefrom, because he admits having seen the coupe constantly from the moment it entered West Fifth Street until the impact occurred, during which time he sounded the bell continuously as a warning. He also observed the automobiles parked along the northerly curb in front of the dyeing establishment which obviously prevented the coupe from turning off the track in that direction, and he saw Cropper attempt to turn first to the left and then to the right in his efforts to avoid being struck by the car. As held in a number of cases, where a person sees another in a position which is in fact dangerous, he may not rely upon dullness to excuse him from not realizing the danger of the position (*Basham* v. *Southern Pacific Co.*, 176 Cal. 320 [168 Pac. 359]); and if he sees the dangerous situation he must use reasonable diligence in analyzing the same (*Starck* v. *Pacific Electric Ry. Co.*, 172 Cal. 277 [L. R. A. 1916E, 58, 156 Pac. 51]), knowledge of danger being imputed where the circumstances are such as to convey to the mind of a reasonable man that

the plaintiff is in a position of peril (*Harrington* v. *Los Angeles Ry. Co.*, 140 Cal. 514 [98 Am. St. Rep. 85, 63 L. R. A. 238, 74 Pac. 15]).

The remaining question, then, to be considered on this branch of the case is whether or not there is any evidence in the record supporting or tending to support the conclusion reached by the jury that the motorman, after becoming aware of the danger, could have avoided the accident by the exercise of ordinary care, but negligently failed to do so. We think there is. In this connection the testimony discloses that when the coupe was driven into its perilous position abreast the automobile parked in front of the dyeing establishment, at which time the motorman became aware of the danger, the street-car was still 35 or 40 feet distant from the coupe, and although there is no evidence to prove that it was possible to bring the street-car to a complete standstill within 50 feet even if traveling as the motorman claims at a speed of only 18 miles an hour, it is reasonable to believe from all the circumstances present that if immediately upon becoming aware of the danger the motorman had applied the brakes, which were in perfect working order, and reversed the power, he could have retarded the speed of the street-car sufficiently to have allowed the coupe to reach its objective and turn off the track to the right in safety between the street-car and the automobile parked in front of the dyeing establishment, because the front left corner of the street-car barely caught the left rear end of the coupe as the coupe was clearing the track. The motorman claims that he did apply the brakes and reverse the power instantly upon observing the coupe coming abreast of the automobile parked in front of the dyeing establishment, but evidence was adduced from which the rational conclusion may be drawn that such was not the case, and that he waited until just a fraction of a second prior to the impact before taking any measures whatever to stop the car or lessen the speed, which, of course, was then too late to be of any effect. In this regard two of the passengers on the street-car testified that the collision followed instantly after the brakes were applied; and it was also shown that even after the car came to a standstill, 135 or 140 feet beyond the point where the motorman claimed he applied the brakes and reversed the power, it started a retrograde movement, which fairly

indicated that the brakes had not been properly set. Furthermore, the testimony of the motorman was to the effect that even though the street-car were traveling 30 miles an hour it could be brought to a complete stop within 90 feet by the proper application of the brakes; consequently, if, as he says, he did apply the brakes and reverse the power when he first saw the coupe come abreast of the automobile parked in front of the dyeing establishment, the street-car doubtless would have stopped within approximately 90 feet, even assuming it to have been traveling at the maximum speed of 30 miles an hour, as testified to by respondents' witnesses; whereas the fact is, as stated, that it ran on for a distance of approximately 140 feet before it came to a standstill.

In any event, the situation revealed by the evidence adduced on the entire case presented a question of fact for the jury to determine, that is, whether the motorman, after becoming aware of the danger, negligently failed to avail himself of the last clear chance to avoid the accident; and the jury having by its verdicts declared that he was thus negligent, it is our conclusion that there is substantial evidence to sustain its verdicts.

The situation presented is not one which may be disposed of under the rule of concurrent negligence, where the negligence of the injured party continues contemporaneously and actively with that of the other party to the accident, up to the very moment of the injury (*Young* v. *Southern Pacific Co.*, 189 Cal. 746 [189 Pac. 746]), because the evidence shows beyond question that immediately after Cropper drove into the dangerous pocket he used every reasonable effort to escape therefrom.

In dealing with the element of the motorman's knowledge of the dangerous situation, one of the instructions given uses the language: "*could have seen* or did see the driver of the automobile upon the railway track, or crossing the same in a dangerous position," etc. (italics ours) ; and appellant assigns the use of the italicized words as error. As held in the cases cited by appellant, before the doctrine of the last clear chance may be given application it must appear that the defendant actually did see the plaintiff in a position of imminent peril and it is not enough that he could have seen the plaintiff in such position but for re-

missness on his part. Here, however, the motorman admitted that he actually saw the coupe on the track and that he also saw the driver thereof endeavoring to extricate himself from his dangerous position, the motorman's testimony being in part as follows: "When I first saw it they came and turned west on Pacific avenue into Fifth, and I saw it all the time after that as it came towards me and I went towards it. When I first saw it, it came about 150 feet with the left wheel about 6 inches over the south rail. I saw it attempt to turn to the left and then attempt to turn to the right"; and, as already pointed out, the situation was such that he ought to have realized the driver's inability to escape therefrom. Moreover, the particular element of the doctrine of the last clear chance which appellant emphasizes by his objection to the instruction was substantially covered in two instructions given at the request of appellant, designated in the record as "D–31" and "D–44"; which, in part, read as follows: " . . . If such person's inability to get off the track is not known to the motorman *until* he is so close that he cannot stop before striking such person, the motorman is not guilty of any negligence and in such case there can be no recovery against the railway"; and " . . . It is not the motorman's duty in such a situation to slow down or stop his car merely because he sees an automobile some distance away approaching the car nor *until he sees* or in the exercise of ordinary care, should conclude *that it would go upon the track or fail to drive off the track. If he then uses ordinary care to avoid the accident that is all that is required of him.*" (Italics ours.) For the reasons stated it would seem that the instruction of which appellant complains could not have operated to appellant's prejudice.

Instructions "P–10" and "P–17," to which appellant also objects, do not relate to the doctrine of the last clear chance, but pertain to the issue of ordinary negligence. The latter instruction which appellant particularly stresses in effect stated that the rules announced therein were to be given effect "provided, of course, that contributory negligence is not also established as defined in these instructions." Furthermore, part of the premise appears to have been inadvertently omitted from this instruction, which so im-

paired its meaning that it cannot be said that the jury was misled by it.

By virtue of respondents' instructions "P–40" and "P–41" the jury was charged that if it believed that Mrs. Nicolai was a passenger and had no control over the driver of the coupe, then the negligence of the driver, if any, could not be imputed to her. Appellant contends that said instructions omitted any reference to contributory negligence on the part of Mrs. Nicolai and that therefore they are erroneous. If such construction can be placed upon the instructions referred to, the omitted element was supplied in others proposed by appellant, notably instruction "D–42." Moreover, the charge of the court consisted of 49 separate instructions, covering some 27 pages of the printed transcript, most of which related to the subject of negligence, and 35 of them were proposed by and given at the request of appellant without modification. It would seem, therefore, that the jury was fully instructed on all phases of the law of negligence.

Each judgment is affirmed.

Tyler, P. J., and Parker, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 20, 1928, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 19, 1928.

All the Justices present concurred.