[Civ. No. 14813. First Dist., Div. Two. Jan. 11, 1952.]

FLOREINE GALBRAITH, Respondent, v. RAY THOMPSON, Appellant.

Healy & Walcom for Appellant.

John F. Moran and James A. Himmel for Respondent.

NOURSE, P. J.—Defendant Thompson appeals from a judgment on a verdict of $7,300 in a wrongful death case. Respondent Floreine Galbraith brought the suit for damages for the death of her son Dennis Hermes of whom she had custody under a divorce decree. He was killed in a collision with appellant's car when he ran into the street in pursuit of a ball. Over and above a general denial defendant pleaded contributory negligence both of the child and the plaintiff mother and unavoidable accident. Defendant's motion for a new trial was denied by failure of the court to act on it.

Appellant primarily relies on insufficiency of the evidence, but also states: "the only issue (except for misconduct of counsel hereinafter cited) before this court is whether it was improper to submit the last clear chance doctrine to the jury." Appellant's position seems to be that the only theory under which he could possibly be held liable was the last clear chance doctrine, that this was also the theory on which the case was tried, and that there was no evidence supporting the application of said doctrine so that the giving of an instruction on it was error; but respondent argues that no negligence of mother or child necessarily contributed to the proximate cause of the injury so that, although there was a possible evidentiary basis for application of the last clear chance theory, the verdict could also be upheld on the theory of simple negligence.

The accident happened on August 4, 1948, about 6:40 in the evening. The weather was fair and it was still light. At that time Dennis was less than 7 years old. He and his mother lived with her parents, Mr. and Mrs. Greenlee, at 3651 22d Street, just east of Sanchez Street. His mother had gone visiting and had left him in the care of his grandmother. After he had had dinner with her at 5:30 he left alone saying he was going to play in the next block. The block in which they lived had a very steep grade and therefore the children

played in the next block which was flat. The apartment house in which they lived had no backyard. He was a bright little boy who for two years had been accustomed to go to school by himself. That evening he went to play with Beatrice Dozier, who lived in the next block and who then was not yet 11. She testified that they went to a garage in the middle of the block on the north side to play ball. Some little children on top of the garage would throw Beatrice's tennis ball down. Beatrice and Dennis on the sidewalk in front would try to catch it and throw it back up. They had played so for half an hour when they missed a ball, which then bounced from the sidewalk into the street. They turned to look for it. After Dennis had hesitated, looking where the ball was, he started to run after it. Beatrice then saw a car, seven houses down from where they were. The houses had 25-foot frontage. She yelled for Dennis to come back. He was running out, not fast, deviating somewhat in the direction of Noe Street. She saw the car again at 3756 22d Street. She was then starting to run after Dennis and she barely missed grabbing his T shirt, when the car hit him and she jumped back. She saw the front part of the car hit him; probably the right front fender. The witness Irene Kane was slowly driving east in the block in question when she saw a ball bounce into the street, a child on the sidewalk running at an angle, southwest, after it, and a car coming up the street at least three car lengths away from the ball. There were very heavy black skid marks. The skid of each wheel measured averaged 34 feet, 6 inches. Defendant stated to the investigating officer that he was going approximately 25 miles an hour when the boy ran into the side of his car and the impact occurred.

Appellant, who was called by the plaintiff under section 2055, who testified also in his own behalf, and had his deposition read into evidence, testified that after driving north on Sanchez he made a left turn into 22d street. At the north side of 22d several cars were parked. He was looking west, knowing that many small children lived in the neighborhood and were at times playing in that street. He saw a ball bouncing into the street and immediately threw on his brakes. He looked to the right because he expected a child to follow it. He testified that the ball was 18 to 20 feet away when he first saw it, but in his deposition he said he imagined it was then 5 or 6 feet to the front and 3 feet to the right side of his car. He did not sound his horn; he was driving fairly close to the center of the street. After one big bounce the

ball hit his radiator. A flash after the ball hit the radiator he saw the top of the boy's head out of the window of the right front door 4 or 5 feet away, just opposite the door, coming towards it. From the time he first put on his brakes until he came to a stop was about 18 or 20 feet. Some part of the right side, probably the right front door hit the boy. Thompson stopped and got out of the car because he thought he had hit him but he did not feel the impact. The child had run out between parked cars jammed close together. The distance of the cars he came out between was only 2 or 3 feet. But he had originally drawn the cars 12 feet apart on the map and both Beatrice and the police officers testified that they were at opposite sides of the driveway of the garage some 10 to 12 feet apart. Defendant testified that the skid marks were 17 to 18 feet long behind the car (but they were measured at 34 feet, 6 inches). His car was 17 feet long. With respect to the speed with which he had been driving he testified that he told the police officer that he was going 20-25 miles. At the time of the impact it was only between 10 and 25. However Officer Conroy testified that Thompson told him he was going approximately 25 at the time of the impact. The officer gave him a ticket for speeding but it was dismissed in court.

It would seem that the above evidence was sufficient to support a verdict on the ground of simple negligence. On the basis of the testimony of Beatrice Dozier and Irene Kane the jury could conclude that when appellant saw the ball it was farther away than he testified, that he didn't sound his horn and that he was going too fast, his speed being still approximately 25 miles after he had braked and was skidding. Whether the boy of not yet 7 was negligent in running after the ball without looking was a matter for the jury. (2 Cal.Jur. 10-Yr.Supp. 442; 19 Cal.Jur. 605; *Graham* v. *Consolidated M. T. Co.*, 112 Cal.App. 648, 652 [297 P. 617]; Ann. 107 A.L.R. 4; 174 A.L.R. 1080.) Even if the child's action was in violation of section 562, Vehicle Code (pedestrian to yield right of way to vehicles when crossing outside crosswalk) the question whether this should be considered negligence *per se* in this child was for the jury. The rule that a child is only held to care in accordance with its age and circumstances to be judged by the jury must prevail over the rule that violation of statute is negligence *per se* (Ann. 174 A.L.R. 1170; 1181 et seq.; *Mecchi* v. *Lyon Van & Storage Co.*, 38 Cal.App.2d 674,

685 [102 P.2d 422] ; *Locklin* v. *Fisher,* 264 App.Div. 452 [36 N.Y.S.2d 162] ). ■ Whether the mother was negligent in letting the child play in the street was also clearly a question of fact for the jury. ■ Although the attorney of respondent in his opening statement mentioned the theory of last clear chance, contributory negligence should not be considered as admitted.

There remains however the question whether it was reversible error to give an instruction on last clear chance. (The formulation of the instruction is not attacked.) ■ Charging the jury upon that doctrine when there is no substantial evidence to support the theory is reversible error. (*Dalley* v. *Williams,* 73 Cal.App.2d 427, 432 [166 P.2d 595].) Nevertheless it would seem that if there is any evidence which might support a verdict on that theory there is less danger in giving the instruction than in omitting it. If it is omitted the contributory negligence doctrine absolutely prevents an award if any contributory negligence is proved, if it is given it only opens the possibility that notwithstanding contributory negligence an award could be granted if a last clear chance for defendant to avoid the accident is found but it does not necessitate it.

Appellant argues that the evidence was insufficient to hold that Dennis was because of his own negligence in a position of danger from which he could not escape by the exercise of ordinary care, because until the impact he could at any time be expected to stop and that his negligence continued concurrently with that of appellant until the very time of the accident. ■■ However the inability to escape can also be caused by total unawareness of danger, and such unawareness can certainly be found by the jury with respect to a child of less than 7 running after a ball. Since *Gird-ner* v. *Union Oil Co.,* 216 Cal. 197, 203 [13 P.2d 915], and *Center* v. *Yellow Cab Co.,* 216 Cal. 205, 208 [13 P.2d 918], the question how long the negligence of the plaintiff continued seems to have lost importance and the decisive question seems to be whether the defendant had the clear opportunity to avoid the accident. ■ The most recent decisions of the Supreme Court with respect to last clear chance, *Peterson* v. *Burkhalter,* 38 Cal.2d 107 [237 P.2d 977], and *Selinsky* v. *Olsen,* 38 Cal.2d 102 [237 P.2d 645], show that the development of the law in that direction continues and that no technical distinctions will be permitted to keep the doctrine from the jury where the jury could find that defendant did not

act as a prudent man after discovering the victim's peril. In the Peterson case, *supra,* it is said at page 111: "The continuing negligence of a plaintiff does not bar him from obtaining a judgment against the person who had the last clear chance to avoid the accident."

Appellant urges that there was no evidence that appellant was actually aware of the child's danger in time to avert it and that he had time to appreciate the situation and to determine on a course of conduct and follow it. It must be conceded that in that respect the evidence is weak. However appellant himself testified that he was thinking of the possibility that children were playing in the street and that immediately when he saw the ball he thought a child might run after it. From the evidence of Beatrice Dozier and Irene Kane it can be derived that he saw the ball when he was more than three car lengths and possibly 175 feet away. According to the skid marks he did not need more than 35 feet to come to a stop. Under these circumstances it does not seem wholly impossible that the last clear chance doctrine might be applicable and since it was a substantial part of plaintiff's case the question was properly left with the jury.

The alleged misconduct of plaintiff's attorney relates to his allegedly bringing out and arguing the testimony of Mrs. Greenlee that defendant told her that he had plenty of insurance and that she did not need to worry, that he had insurance to take care of everything. It is respondent's position which was upheld by the trial judge, that the reference to insurance is here connected up with admission of liability and that it may be referred to and argued for that purpose (*Freeman* v. *Nickerson,* 77 Cal.App.2d 40, 58 [174 P.2d 688] ; *McPhee* v. *Lavin,* 183 Cal. 264, 269 [191 P. 23]). Appellant does not give any good reason why the expression used by defendant could not be considered as admission of liability.

Judgment affirmed.

Goodell, J., and Jones, J. pro tem., concurred.