[L. A. No. 22524. In Bank. Apr. 9, 1953.]

ALBERT J. SILLS, Appellant, v. LOS ANGELES TRANSIT LINES (a Corporation) et al., Respondents.

Francis J. Gabel and Henry F. Walker for Appellant.

Melvin L. R. Harris and Trippet, Newcomer, Yoakum & Thomas for Respondents.

SPENCE, J.—Plaintiff sought damages for injuries suffered when an automobile which he was driving was struck by a streetcar owned by the defendant transit company and operated by defendant Parker. The complaint alleged that the proximate cause of the collision was the negligent operation of the streetcar by defendants. Such charge of negligence was denied by defendants in their respective answers, and each specifically pleaded contributory negligence. The jury returned a verdict in favor of defendants. From the judgment accordingly entered, plaintiff appeals.

The principal question presented is whether the trial court erred in refusing an instruction on the doctrine of the last clear chance. ▮▮▮ Each party is entitled to have his theory of the case submitted to the jury in accordance with the pleadings and proof (*Cole* v. *Ridings,* 95 Cal.App.2d 136, 144 [212 P.2d 597]), and it is incumbent upon the trial court to instruct on all vital issues involved (*Jaeger* v. *Chapman,* 95 Cal.App.2d 520, 525 [213 P.2d 404]). Viewing the evidence in the light "most favorable to the contention that the [last clear chance] doctrine is applicable . . . since plaintiff is entitled to an instruction thereon if the evidence so viewed could establish the elements of the doctrine" (*Selinsky* v. *Olsen,* 38 Cal.2d 102, 103 [237 P.2d 645]; *Hopkins* v. *Carter,* 109 Cal.App.2d 912, 913 [241 P.2d 1063]), we have concluded that the requested instruction should have been given, and that its refusal constituted prejudicial error.

The accident occurred on October 17, 1949, about 6:30 p.m. at the intersection of Pacific Boulevard and 52d Street in Huntington Park. Pacific Boulevard runs north-south and 52d Street, running east-west, crosses it at right angles. North of the intersection Pacific Boulevard is divided into three sections: an unpaved private right of way in the center where the streetcar tracks are laid; and pavement running parallel on either side for vehicular travel, the east side for northbound traffic and the west side for southbound traffic.

The private right of way ceases at 52d Street, and south thereof Pacific Boulevard is paved from curb to curb with streetcar tracks in the center.

Plaintiff was driving his automobile southerly on Pacific Boulevard in the lane nearest the private right of way. As he neared 52d Street, he started to make a left turn, eastward in the intersection. There was a northbound streetcar approaching the intersection at a speed of about 30 miles per hour. Plaintiff made a partial turn, stopping on the southbound track, with his automobile facing in a southeasterly direction and leaving the northbound track open. As plaintiff's automobile was so stopped awaiting the passage of the northbound streetcar, a southbound streetcar struck plaintiff's automobile at the left front door. The force of the impact knocked plaintiff's automobile about 60 feet from the point of collision and turned it in a southwesterly direction as it came to rest against the west curb of Pacific Boulevard some 20 feet south of 52d Street.

Prior to the collision, the southbound streetcar had made its last stop about four blocks or some 1,500 feet north of 52d Street, and the motorman did not expect to make a stop at the latter crossing. The motorman testified that the streetcar was traveling about 20 miles per hour as he first observed plaintiff's automobile about 85 feet away starting to make its turn at the intersection, and that it was about 75 feet away when it stopped on the track. He further testified that upon seeing plaintiff's automobile turn, he applied the brakes and began ringing the streetcar bell. The street lights were burning, as were the lights on both plaintiff's automobile and the streetcar.

A passenger on the streetcar testified that she was seated on the right-hand side about three or four seats from the middle door; that she heard the motorman ring his bell extensively; that when he applied his brakes she looked to the front and saw the automobile stopped on the track; that the streetcar was about 75 or 80 feet north of the intersection and the stopped automobile was about 10 feet to the south thereof, or a total distance of some 85 to 90 feet from the streetcar. She further testified that the clanging of the bell was long and loud; that after hearing it, she leaned to the left, shifted her position to see past the people in front, and then saw the stopped automobile at the above-mentioned distance.

Plaintiff testified that as he started to turn left he looked to the north and saw the southbound streetcar about four blocks away. He then looked to the south and saw the northbound streetcar at a distance variously estimated from a half block to a block and a half away, and traveling about 30 miles per hour. He stopped to permit the northbound streetcar to pass. He continued looking from left to right. The next time he looked left he saw the southbound streetcar about one block away—"going terribly fast." He thought of moving forward but was afraid he could not clear the track ahead of the approaching northbound streetcar, which was then only 15 or 20 feet away. He thought of moving backward and getting out but by that time the southbound streetcar was only 6 or 7 feet away, and then it struck him. He stated that there was no change in the speed of the southbound streetcar from the time he saw it until the impact. While he estimated that he was stopped on the track "maybe 25 or 30 seconds" before the collision, he "didn't clock it." He could not state definitely whether there were automobiles behind him when he looked back, except that he did recall two lights, but "where they were" he didn't know. As he finally looked to the left, seeing the "big headlight" and the "big front" of the southbound streetcar bearing down on him a few feet away, he knew that he had no time to get off the track and so he tried to slide across the seat but was caught in the impact.

The parties are agreed on the necessary elements which must be present in order to warrant the application of the last clear chance doctrine. These elements were stated in *Daniels* v. *City & County of San Francisco,* this day filed, *ante,* p. 614 [255 P.2d 785]. But the question to be determined here is whether there is substantial evidence to meet the essential requirements for invocation of that doctrine. Defendants contend that the necessary evidentiary support is lacking for these reasons: that plaintiff was aware of his dangerous position on the streetcar track and could have saved himself by the exercise of ordinary care; that prior to the collision the motorman neither had knowledge of plaintiff's position of peril nor were the circumstances such that he should have realized the impending danger; and finally, that the motorman had no last clear chance to avoid the accident by the exercise of ordinary care. However, the record shows that these matters involve factual considerations, as the evidence most favorable to plaintiff's theory, if

believed by the jury, would have warranted the application of the last clear chance doctrine. (*Girdner* v. *Union Oil Co.,* 216 Cal. 197, 199 [13 P.2d 915]; *Hopkins* v. *Carter, supra,* 109 Cal.App.2d 912, 915; also *Galbraith* v. *Thompson,* 108 Cal.App.2d 617, 622-623 [239 P.2d 468].)

 Concededly, plaintiff by reason of his own negligence found himself in a position of danger on the track in front of the approaching streetcar, but there arises the question of his ability to escape from his perilous predicament. Defendants cite plaintiff's testimony that the streetcar was four blocks away as he stopped on the track and remained there 25 to 30 seconds prior to the collision, that the motor of his automobile was running as it stood in second gear, and that a reasonable means of escape was then open to him by simply backing off the track. However, plaintiff was clearly only hazarding a guess as to the duration of his stop, and other testimony indicated a considerably shorter time interval. It was for the jury to determine the weight to be accorded to the testimony of the various witnesses and to reconcile, if possible, any inconsistencies in the time, speed and distance estimates in their factual accounts. (*Kuhn* v. *Gottfried,* 103 Cal.App.2d 80, 84 [229 P.2d 137].)

As to the suggested avenue of escape through backing his automobile off the track, plaintiff could not state definitely whether there was any traffic behind him which would have precluded such move but he did testify that as he thought of "backing and getting out," he saw the oncoming streetcar only 6 or 7 feet away, and then it struck him. As has been said: "It is always easy, after an accident, to see how it could have been avoided, but a man's duty before the calamity is not measured by such *ex post facto* information." (*Harrington* v. *Los Angeles Ry. Co.,* 140 Cal. 514, 521 [74 P. 15, 98 Am.St.Rep. 85, 63 L.R.A. 238].) A person in impending peril, where immediate action is necessary to avoid it, is not required to exercise all that presence of mind which is normally exacted of a careful and prudent person under ordinary circumstances, nor to show that his inability to escape from the' threatened danger was a physical impossibility. Here the conflicting testimony relating to the duration of plaintiff's stop and the conflicting testimony relating to the position of the oncoming streetcar at the time that plaintiff made the stop were matters for the jury to consider in determining the reasonableness of plaintiff's conduct. (*Selinsky* v. *Olsen, supra,* 38 Cal.2d 102, 105.)

Turning to the question of the motorman's awareness of plaintiff's dangerous position on the track, his own testimony attests to such knowledge. He saw plaintiff start the turn at the lighted intersection and bring his automobile to a stop on the southbound track in front of his oncoming streetcar. He too had noticed the approaching northbound streetcar which caused plaintiff to stop so as to permit it to proceed through the intersection. It was for the jury to determine whether the circumstances were such as would alert a reasonable man as to the danger of plaintiff's predicament and plaintiff's probable inability to escape therefrom. (*Peterson* v. *Burkhalter*, 38 Cal.2d 107, 111 [237 P.2d 977].) So it was aptly said in *Nicolai* v. *Pacific Electric Ry. Co.*, 92 Cal.App. 100, at pages 105-106 [267 P. 758]: "As held in a number of cases, where a person sees another in a position which is in fact dangerous, he may not rely upon dullness to excuse him from not realizing the danger of the position (*Basham* v. *Southern Pac. Co.*, 176 Cal. 320 [168 P. 359]); and if he sees the dangerous situation he must use reasonable diligence in analyzing the same (*Starck* v. *Pacific Electric Ry. Co.*, 172 Cal. 277 [156 P. 51, L.R.A. 1916E 58]), knowledge of danger being imputed where the circumstances are such as to convey to the mind of a reasonable man that the plaintiff is in a position of peril (*Harrington* v. *Los Angeles Ry. Co.*, 140 Cal. 514 [74 P. 15, 98 Am.St.Rep. 85, 63 L.R.A. 238])." (See, also, *Paulos* v. *Market Street Ry. Co.*, 136 Cal.App. 163, 170 [28 P.2d 94]; *Gillette* v. *City of San Francisco*, 58 Cal.App.2d 434, 444 [136 P.2d 611].)

There now remains the matter of whether the motorman had a last clear chance to avoid the collision by exercising ordinary care but failed to do so. As above noted, the streetcar was traveling about 20 miles per hour. The passenger on the streetcar placed plaintiff's stopped automobile about 85 to 90 feet ahead on the track when she first observed it after she heard the motorman's initial clanging of the warning bell and then maneuvered into position so as to see in front of the streetcar—a shift of movement which might reasonably have required two or more seconds. From such considerations the jury could have found that the streetcar was some 125 feet or more from plaintiff's automobile when the motorman first saw it and commenced ringing the bell. An expert on traffic controls and speed conditions testified that a streetcar traveling at 20 miles an hour

could be stopped in 66.6 feet braking time, and that 21.5 feet should be allowed for reaction time, or a total distance of 88.1 feet. There was testimony indicating that there was no change in the speed of the oncoming streetcar from the time the motorman first observed plaintiff's automobile starting a left turn in the intersection until the impact. Thus, while the motorman testified that he immediately applied his brakes when he saw the automobile on the track ahead, the jury might have disbelieved him and accepted plaintiff's statement that there was no decrease in the speed of the approaching streetcar at any time prior to the impact. (*Bechtold* v. *Bishop & Co., Inc.,* 16 Cal.2d 285, 291 [105 P.2d 984] ; also *Hansen* v. *Bear Film Co., Inc.,* 28 Cal.2d 154, 184 [168 P.2d 946] ; *Estate of Durham,* 108 Cal.App.2d 154, 155 [238 P.2d 1061].) The speed of the streetcar at the instant of collision was such as to knock the automobile about 60 feet and turn it against the curb. In these circumstances the jury could have found that after seeing plaintiff's automobile stopped on the track, the motorman had a last clear chance to avoid the collision by the exercise of ordinary care, and that the collision resulted from his failure to avail himself of that opportunity. (*Selinsky* v. *Olsen, supra,* 38 Cal.2d 102, 105-106.)

Defendants next challenge the form of plaintiff's requested instruction on the last clear chance doctrine. It is true that the instruction was not in the precise form ordinarily adopted for listing the necessary elements for operation of the last clear chance doctrine (*Cole* v. *Ridings, supra,* 95 Cal.App.2d 136, 142), but it did correctly state the essential elements required for its application. Therefore, it or some other acceptable instruction embodying that theory of recovery should have been given. (*Wright* v. *Los Angeles Ry. Corp.,* 14 Cal.2d 168, 179 [93 P.2d 135].)

The opening sentence, which is the main subject of defendants' criticism, declared that ''negligence on the part of a plaintiff does not *necessarily* preclude such plaintiff from recovering damages even though the accident would not have occurred but for such negligence.'' (Emphasis added.) There then followed an explanatory sentence introduced by the word ''Thus'' and setting forth the circumstances which would bring into operation the last clear chance doctrine. (*Girdner* v. *Union Oil Co., supra,* 216 Cal. 197, 202.) Taken as a whole, the instruction correctly stated the law for application of the doctrine. The opening sentence merely served as

an introductory statement calling attention to the fact that contrary to the ordinary rule, the negligence of the plaintiff would not *necessarily* preclude his recovery. Such observation coincided with the settled principle that negligence of a plaintiff, without which the accident would not have happened and which continues in existence up to the very moment of the impact or accident, ''does not bar him from obtaining a judgment against the person who had the last clear chance to avoid the accident.'' (*Peterson* v. *Burkhalter, supra,* 38 Cal.2d 107, 111; *Galbraith* v. *Thompson, supra,* 108 Cal. App.2d 617, 623; see, also, *Harrington* v. *Los Angeles Ry. Co., supra,* 140 Cal. 514, 522; *Selinsky* v. *Olsen, supra,* 38 Cal.2d 102, 104-105; 40 Cal.L.Rev. 404.) The next sentence, in the manifest course of qualifying the exception to the general contributory negligence rule, twice refers to defendants' liability being contingent on a finding that the motorman's negligence was the proximate cause of the collision. In such circumstances, there is no basis for defendants' argument that the instruction authorized plaintiff's recovery under any other condition.

Defendants finally contend that even though it was improper for the trial court to have refused the requested instruction on the last clear chance doctrine, such refusal was not prejudicial error. In support of their position, defendants urge that every major element of that doctrine was covered by other instructions. Two of the cited instructions concerned proximate cause, one being the usual definition thereof and the other referring to a ''violation of law'' as ''of no consequence unless it was a proximate cause'' of the injury. The third cited instruction was a lengthy declaration of the law relating to the right-of-way at an intersection, and the duty to exercise ordinary care so as to avoid a collision. Manifestly, such instructions did not purport to deal with the last clear chance doctrine and cannot be deemed adequate for submitting to the jury the question of defendants' liability upon that theory. Moreover, at defendants' request the jury was expressly charged, without qualification, that contributory negligence would bar a recovery, and no declaration was made covering plaintiff's theory of his right to prevail under the last clear chance doctrine. (*Peterson* v. *Burkhalter, supra,* 38 Cal.2d 107, 111.) In these circumstances defendants unavailingly argue the proposition that the erroneously refused instruction should

not be deemed prejudicial because the principle therein stated was fully and fairly covered in other instructions to the jury. (*McMahon* v. *Marshall,* 111 Cal.App.2d 248, 251 [244 P.2d 481].) Rather here, as the rule is stated in *Daniels* v. *City & County of San Francisco, supra,* this day filed, *ante,* p. 614 [255 P.2d 785], the refusal of the court to instruct on the last clear chance doctrine prejudiced plaintiff's rights and constitutes ground for reversal of the judgment.

Other points raised by plaintiff are not likely to occur on a retrial and need not be here discussed.

The judgment is reversed.

Gibson, C. J., Shenk, J., Carter, J., and Traynor, J., concurred.

Edmonds, J., dissented.

SCHAUER, J., Dissenting.—I would affirm the judgment. As in *Daniels* v. *City & County of San Francisco, ante,* p. 614 [255 P.2d 785], the doctrine of "last clear chance" as applied here in effect substitutes the word "possible" for "clear." The evidence tends to show clearly that the plaintiff was negligent and that the *plaintiff* may have had a last clear chance to escape after he had driven upon the southbound track, but it fails to show that the motorman of a vehicle of the size and weight of the streetcar, confined to its tracks on its right of way, had such an opportunity to avoid the collision as would make it reasonable to conclude that he had a *clear* chance.

The argument advanced in the majority opinion as an answer to defendants' contention in respect to the continuing negligence of plaintiff and the nonapplicability of the doctrine of last clear chance not only fails to constitute an adequate answer but tends affirmatively to support defendants' contention. The majority say (p. 636, *supra*) : "Defendants cite plaintiff's testimony that the streetcar was four blocks away as he stopped on the track and remained there 25 to 30 seconds prior to the collision, that the motor of his automobile was running as it stood in second gear, and that a reasonable means of escape was then open to him by simply backing off the track. However, plaintiff was clearly only hazarding a guess as to the duration of his stop, and other testimony indicated a considerably shorter time interval. It was for the

jury to determine the weight to be accorded to the testimony of the various witnesses and to reconcile, if possible, any inconsistencies in the time, speed and distance estimates in their factual accounts.''

The proposition that plaintiff stopped on the car tracks while the streetcar was four blocks away and remained there, after having seen the car approaching, for 25 or 30 seconds prior to the collision, is quite different from the alternative proposition suggested in the second quoted sentence, to the effect that plaintiff was ''only hazarding a guess'' and that ''other testimony indicated a considerably shorter time interval.'' If the facts are as first suggested then it would seem that plaintiff had a clear and abundant opportunity to remove himself from his position of peril and that it was his own negligence which continued him (while he was neither helpless nor unaware) in that position. The answer advanced by the majority in an attempt to escape such conclusion—the possibility of a factual determination that there was ''a considerably shorter time interval''—answers too much. If such time interval was short enough to excuse the plaintiff from not having extricated himself from his position of peril, then it inevitably exculpates defendants from liability under the last clear chance doctrine because certainly plaintiff's automobile could have been removed from its position much more expeditiously than defendants' far heavier, moving, track-bound vehicle could have been stopped.

The decision in this case, together with the holdings in *Daniels* v. *City & County of San Francisco, ante,* p. 614 [255 P.2d 785], and in *Peterson* v. *Burkhalter* (1951), 38 Cal.2d 107 [237 P.2d 977], demonstrate that the transition of the doctrine from ''clear'' to ''possible'' chance application is an accomplished fact, but possibly not yet a dependable one. (See *Rodabaugh* v. *Tekus* (1952), 39 Cal.2d 290, 297 [246 P.2d 663].) The character of the transition and the uncertainty of its application serve to emphasize the need for legislative or constitutional study and amendment, rather than mere judicial extension, of the concepts and vehicles of the law. But until the law has been amended by orthodox processes and we no longer have to call the basic principle the doctrine of last *clear* chance I think that we should refrain from applying it to facts which on any reasonable view of the evidence give the party charged no more than a slight or possible chance.