[Civ. No. 24545.   Second Dist., Div. One.   Oct. 17, 1960.]

VIOLA H. RANSDELL et al., Respondents, v. LOS AN-
GELES METROPOLITAN TRANSIT AUTHORITY
et al., Appellants.

Ball, Hunt & Hart and Clarence S. Hunt for Appellants.

Simon, McKinsey & Miller and Harry J. Simon for Respondents.

WOOD, P. J.—This is an action for damages resulting from a collision of an interurban electric car and an automobile in an intersection of streets in Long Beach. The automobile was owned and operated by plaintiff Viola Ransdell; and plaintiff Mary Hall was a passenger therein. The electric car, which was a passenger car of defendant Los Angeles Metropolitan Transit Authority, was operated by defendant Carl Rummans. Mrs. Ransdell and Mrs. Hall sought damages for personal injuries, and Mrs. Ransdell also sought damages for destruction of her automobile. Judgment, in accordance with verdicts, was for Mrs. Ransdell for $5,000, and was for Mrs. Hall for $25,000. Defendants' motion for a new trial was denied, and they appeal from the judgment.

Appellants contend that the evidence was insufficient to support the judgment; the court erred in instructing the jury on the doctrine of last clear chance; and the damages awarded to Mrs. Hall were excessive.

The collision occurred in the intersection of American Avenue and 16th Street. American Avenue, which is 85 feet wide, extends northerly and southerly, and 16th Street, which is 36 feet wide, extends easterly and westerly. There is a double white line in the center of American Avenue, and on each side of the double white line there are three marked traffic lanes. Each inside traffic lane is approximately 12 feet wide, and each outside traffic lane is approximately 18 feet wide. In each traffic lane which is next to the double white line there is an electric car track. The inside rail of each track (that is, the rail nearer the center of American Avenue) is approximately 5 feet from the center of the avenue. The track west of the double line is used by southbound electric cars and

the track east of the line is used by northbound electric cars. At the north and south entrances to the intersection (that is, the entrances on American Avenue) there is a marked cross-walk which is approximately 12 feet wide. There is an official tricolored (red, yellow, green) traffic control signal on each corner of the intersection. American Avenue, between 14th and 16th Streets, is in a business district and is paved. The distance between 15th and 16th Streets is about 500 feet.

On Sunday, January 11, 1959, about 3:30 p.m., Mrs. Ransdell was driving her 1955 Ford automobile in a southerly direction on American, and Mr. Rummans was operating an interurban electric car in a northerly direction on American. Mrs. Hall was in the automobile. While Mrs. Ransdell was approaching the intersection of American and 16th, she was in the southbound traffic lane which was next to the double white line. At that intersection she turned the automobile to the left intending to go east onto 16th. The automobile stopped when its front wheels were between the rails of the northbound track (track east of the center of American). While the automobile was stopped there, the electric car struck the right front side of the automobile and pushed or dragged it 115 feet north. The place in the intersection where the collision occurred was approximately 12 feet south of the north curb-line of 16th Street and approximately 5 feet east of the center of American.

Mrs. Ransdell testified that when she was approaching the intersection and was about half a block north thereof the traffic "light was red" (for traffic on American), and she stopped between 30 and 40 feet north of the intersection; there were two automobiles in front of her in the lane in which she was traveling; the light changed to green for traffic on American and she "started up," following the automobile in front of her; when she arrived at the intersection of American and 16th, the traffic "light was green" (for traffic on American); the signals of her automobile were "on" and "her hand was out" (indicating a left turn); the automobile in front of her made a left turn and she followed that automobile; when she turned, she saw the interurban car; it was "around" 15th Street (approximately 500 feet from her); after she turned, the automobile in front of her stopped suddenly; she applied the brakes and her automobile stopped; at that time the front wheels of her automobile were between the rails of the north-bound electric car track; her automobile "stalled", and she

tried to start it; after her automobile stalled, she heard the whistle of the interurban car, she "looked and saw" the car; it was then about half way between 15th and 16th Streets; she tried to start her automobile; she became frightened and "couldn't do anything."

Officer Taylor, a witness called by plaintiffs, testified that he was a motorcycle officer for the city of Long Beach; on January 11 he was on his motorcycle which was parked on the southeast corner of the intersection of American and 16th; about 3:30 p.m. of that day he saw Mrs. Ransdell's automobile; it was stopped in the intersection on the car track for northbound cars and was facing "in an easterly but slightly south direction"; he heard a street car bell ringing intermittently; shortly thereafter he heard the bell ringing constantly; then he looked toward the south and saw the interurban car coming toward the intersection; it was traveling between 25 and 30 miles an hour; he looked toward the automobile and it had not been moved from the place where it was when he saw it before he heard the bell; he looked again toward the interurban car; the speed of the car had not decreased; he watched the car until it struck the automobile; he could not recall whether the speed of the car decreased before it struck the automobile; he estimated that it was "a good ten seconds" from the time the bell began to ring constantly until the time the car struck the automobile; he did not remember whether he heard the horn of the interurban car.

Officer Taylor referred to a photograph of the scene of the collision (which is an exhibit herein) and made a mark thereon indicating where the interurban car was when he heard the bell start to ring constantly and when first he saw the car. The location, as marked on the exhibit, was approximately 370 feet south of the intersection.

Mr. Varzak called as a witness by plaintiffs, testified that on January 11, he was in a used car lot which was on the west side of American and south of the intersection of American and 16th; he heard a horn blowing; he "looked and saw" the interurban car; it was traveling between 25 and 30 miles an hour; when the car was "10 to 20 feet" north of the place where he first saw it, it started to slide and it continued to slide until it struck Mrs. Ransdell's automobile.

Mr. Varzak made a mark on said photograph indicating where the interurban car was when he first saw it. The loca-

tion, as marked on the photograph, was approximately 110 feet south of the intersection.

Mrs. Brazil, called as a witness by plaintiffs, testified that on January 11, she was in a used car lot on the west side of American and south of the intersection of American and 16th; she heard the ringing of a bell and the blowing of a horn; a "minute or less" later when she saw the interurban car it was approximately 110 feet south of the intersection and was traveling 25 or 30 miles an hour; she did not "believe" that the speed of the car changed, and she did not see the car strike the automobile.

Mrs. Jones, a witness called by plaintiffs, testified that on January 11 she was with Mrs. Brazil (in the used car lot) and she heard the horn of the electric car; when she saw the interurban car it was traveling 25 to 30 miles an hour and the horn was blowing; she was aware of the horn blowing long before she saw the car; she watched the car until it hit the automobile; it did not seem to slow down very much before it hit the automobile; she had heard the noise made by "one of these red (electric) cars" when emergency brakes were applied; she heard that noise before she saw the car.

Mrs. Jones made a mark on said photograph indicating where the interurban car was when she first saw it. That location, as marked on the photograph, was approximately 63 feet south of the intersection.

Richard Parish, called as a witness by plaintiffs, testified that he was a passenger on the interurban car at the time of the collision; he estimated that the speed of the car, while it traveled the block preceding the collision, was 20 miles an hour; he did not remember whether he heard a bell or a horn before the collision; he felt the brakes of the car "go on hard"; he estimated that the car moved forward about 7 or 8 feet after the brakes were applied and before it struck the automobile; it might be that one or two seconds passed from the time the brakes were applied until the car struck the automobile.

Mr. Rummans, the operator of the interurban car, testified that when he first saw Mrs. Ransdell's automobile, the interurban car was approximately 100 feet north of 15th Street (approximately 400 feet south of the intersection where the collision occurred); the automobile (southbound and on the west side of American) was stopped at the traffic signal at 16th and was on the southbound car track at the crosswalk (the crosswalk on the north side of the intersection); the signal

light "was red" (for traffic on American); two automobiles (northbound and on the east side of American) were stopped at the south side of the crosswalk which extended across American on the south of the intersection; one of those automobiles was in the second traffic lane east of the center of American and the other was in the third lane east of the center of American; the "light turned green" (for traffic on American) and then the two automobiles, which had stopped south of the intersection, proceeded "straight ahead" across the intersection; as the two automobiles proceeded across the intersection, Mrs. Ransdell started to make a left turn; the interurban car was then about 160 feet south of the intersection; Mrs. Ransdell's automobile stopped with "the right front wheels in the center of the northbound tracks"; the interurban car was then approximately 140 feet from the crosswalk; when Mrs. Ransdell's automobile stopped, he "put the brake on . . . for a normal stop" and "threw the power off" and rang the bell; when he "saw" that her automobile "was not going to move," he "went into emergency," changed from ringing the bell to blowing the whistle, and put the brake "on emergency"; he blew the whistle until the interurban car stopped; the last stop he made, prior to the collision, was at American Avenue and Anaheim Street (three blocks south of the intersection where the collision occurred); he had a clear and unobstructed view from Anaheim to 16th Street; the maximum speed of the interurban car between Anaheim and 16th was 25 miles an hour; the interurban car traveled "approximately 60 to 65 feet" between the time he first applied the brake and the time he put the brake on emergency; when he "went into emergency" the interurban car was "approximately 85 to 90 feet" from Mrs. Ransdell's automobile; he did not ring the bell or blow the horn from 14th Street to 16th Street for any other purpose than to warn the operator of the automobile "to get off the tracks."

Mr. Rummans also testified that he had operated an interurban car on "that line" for approximately nine months prior to the collision; the car was approximately 75 feet long, its seating capacity was 80 passengers, and its weight was approximately 78 tons; he had observed, while he was receiving instructions on operating such a car, the distance which a car would travel after it was put "in an emergency stop" on a private right-of-way; he observed that the stopping distance in an emergency for a car traveling 20 miles an

hour was "approximately 180 to 200 feet," and at 30 miles an hour, the stopping distance was approximately 300 feet; his experience, with regard to the difference between the stopping distance on a private right-of-way and the stopping distance on a street, was that a car would go farther on a street by reason of foreign substances on the track.

On cross-examination, Mr. Rummans testified that he was "approximately at 15th Street" when he first saw Mrs. Ransdell's automobile and it was then stopped "on the tracks at the southbound tracks crosswalk," and was "facing south."

In his deposition, Mr. Rummans testified that he was at 14th Street when he first saw Mrs. Ransdell's automobile; it was "stopped for a red light at 16th Street"; when the traffic light turned green (for traffic on American) he was approximately 10 feet north of the intersection of 15th and American; as the signal light changed from red to green, Mrs. Ransdell began to turn left to go east on 16th; he watched Mrs. Ransdell's automobile as it commenced to turn. (At the trial he said he was about 100 feet north of *15th* Street when he first saw the automobile.)

Mr. Sandlin, the conductor on the interurban car, testified that he was on the rear platform of the car at the time of the collision; when the car was traveling north from Anaheim, its speed was between 25 and 30 miles an hour; a "short time" after the car left 15th Street, he heard the whistle and felt the "brake going into emergency"; before he heard the whistle, he heard the bell ringing; the car was between 90 and 100 feet from the place where the collision occurred.

Appellants contend that the evidence was insufficient to support the judgment; and that the court erred in giving the instruction on the doctrine of last clear chance. They argue that the evidence did not justify the application of the doctrine of last clear chance; that there was no evidence that after the operator of the interurban car became aware of plaintiff's position of danger, and her inability to escape therefrom, he had a last clear chance to avoid the collision. The operator testified that he saw Mrs. Ransdell's automobile before it turned left and he watched it while it turned; he saw her automobile stopped with the front wheels in the center of the track; he applied the brake for a normal stop, threw off the power, and rang the bell; when he saw that the automobile was not going to move, he applied the emergency brake and started to blow the whistle; he had observed (when

he was receiving instruction as an operator) that the distance that would be required to stop the car in an emergency, when it was traveling 25 miles an hour on a right-of-way, was 180 to 200 feet; the maximum speed of the car between Anaheim and 16th Street was 25 miles an hour; he did not ring the bell or blow the horn from 14th to 16th Street for any other purpose than to warn the operator of Mrs. Ransdell's automobile to get off the track.

There was evidence (testimony of Officer Taylor) that after the automobile had stopped on the northbound car track, and while the interurban car bell was ringing constantly, the interurban car was approximately 370 feet south of the intersection. There was evidence (testimony of Mrs. Ransdell) that after her automobile had stopped on the track, and while she was trying to start it, the interurban car was half way between 15th and 16th Streets (approximately 250 feet from her); that the rate of speed of the interurban car had not decreased very much, if decreased at all, at any time before the interurban car struck the automobile. The interurban car pushed or dragged the automobile 115 feet after the collision.

A formula with respect to the applicability of the doctrine of last clear chance is stated in *Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729, 743 [306 P.2d 432], and it is not necessary to repeat it here.

In *Sills* v. *Los Angeles Transit Lines*, 40 Cal.2d 630, 637 [255 P.2d 795], it was said: " 'As held in a number of cases, where a person sees another in a position which is in fact dangerous, he may not rely upon dullness to excuse him from not realizing the danger of the position [citation]; and if he sees the dangerous situation he must use reasonable diligence in analyzing the same [citation], knowledge of danger being imputed where the circumstances are such as to convey to the mind of a reasonable man that the plaintiff is in a position of peril [citation].' "

In the present case the jury could reasonably infer that the interurban car was more than 370 feet south of the intersection when the operator (Mr. Rummans) saw the automobile stopped on the track in front of the car; that he knew, or should have known, that the driver of the automobile was unable to drive the automobile off the track; that he (Mr. Rummans) could have stopped the car in time to avoid the collision if he had applied the emergency brake when he knew, or should have known, that the driver of the automobile was

unable to drive off the track. The court did not err in giving the instruction on the doctrine of last clear chance.

Appellants contend that the amount of damages awarded to Mrs. Hall was excessive. There was evidence that Mrs. Hall received injuries, as follows: Fracture of the right ankle bone and other bones in the ankle and foot; fracture of the left collar bone; severe contusions on the shoulders; laceration on the right elbow; abrasions, bruises, and shock.

Three two-inch screws were placed in her ankle in order to fix the bones in place. A cast was placed on the foot and leg. She was in the hospital four weeks, and after she returned home she was confined to her bed for more than a month. Her injuries were painful, and she will continue to suffer pain. Aseptic necrosis (bone death) has commenced in the ankle bone. She will be confined to a wheelchair for 12 or 18 months (from July, 1959), and thereafter she may be able to walk on crutches; she probably will never be able to walk without crutches. A subsequent operation will be necessary to remove the screws from the ankle and it may be necessary to graft bone on the ankle bone. Her medical expenses prior to the trial amounted to $2,313.40. It was estimated that future medical expenses would amount to $1,500. She was 78 years of age and, at the time of the trial, lived with her daughter, Mrs. Ransdell. Prior to the collision she was in good health.

The question as to the amount of damages was for the determination of the jury. (See *Sexton* v. *Key System Transit Lines,* 144 Cal.App.2d 719 [301 P.2d 612].) Defendants' motion for a new trial was denied. It does not appear that the amounts of the verdicts were the result of passion or prejudice on the part of the jury. It cannot be said as a matter of law that the amount of either verdict was excessive.

The evidence was sufficient to support the judgment.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.